COPY

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

<u>ZAKEYA STARKS</u>
    **PLAINTIFF**

        Use below number on
        all future pleadings

-- vs --

    No.  A 2201970
        SUMMONS

<u>KELLY YOUTH SERVICES INC</u>
    **DEFENDANT**

    KELLY YOUTH SERVICES INC
    800 COMPTON ROAD UNIT 11        D - 1
    CINCINNATI OH 45231

You are notified
that you have been named Defendant(s) in a complaint filed by

    ZAKEYA STARKS
    3355 ROBINET DRIVE
    CINCINNATI OH 45238

        Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**PAVAN PARIKH, 1000 MAIN STREET ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney         PAVAN PARIKH
MATTHEW G BRUCE         Clerk, Court of Common Pleas
11260 CHESTER ROAD         Hamilton County, Ohio
SUITE 825
CINCINNATI    OH    45246

    By  <u>RICK HOFMANN</u>
        Deputy

    Date:  June 2, 2022

D135123522



# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
June 1, 2022 10:49 AM
     PAVAN PARIKH
   Clerk of Courts
 Hamilton County, Ohio
CONFIRMATION 1195471
```

**ZAKEYA STARKS**　　　　　　　　　　　　　　**A 2201970**

vs.

**KELLY YOUTH SERVICES INC**

FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

PAGES FILED: 12

EFR200

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ZAKEYA STARKS<br>3355 Robinet Drive<br>Cincinnati, OH 45238<br><br>    Plaintiff,<br><br>    v.<br><br>K.E.L.L.Y. YOUTH SERVICES, INC.<br>800 Compton Road, Unit 11<br>Cincinnati, OH 45231<br><br> **Serve Also:**<br> K.E.L.L.Y. YOUTH SERVICES, INC.<br> c/o Joe Kelly<br> Statutory Agent<br> 800 Compton Road, Unit 11<br> Cincinnati, OH 45231<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

  Plaintiff, Zakeya Starks, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Starks is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant K.E.L.L.Y. Youth Services, Inc. ("KYS") is a domestic non-profit corporation that conducts business within the state of Ohio.

3. The relevant location of the events and omissions of this Complaint took place was 800 Compton Road, Unit 11, Cincinnati, OH 45231.

4. KYS is, and was at all times hereinafter mentioned, Starks' employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. §12101, the Family First Coronavirus Relief Act ("FFCRA"), and R.C. § 4112.01 et seq.

1

5. Within 300 days of the adverse employment actions described herein, Starks filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00344 ("EEOC Charge").

6. On or about March 15, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Starks regarding the EEOC Charge.

7. Starks received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Starks had filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Starks had properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. The material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

14. Starks is a former employee of KYS.

15. At all times noted herein, Starks was qualified for her position at KYS.

16. At all times noted herein, Starks could fully perform the essential functions of her job, with or without reasonable accommodation.

17. Starks was hired as a house manager on or around May 19, 2022, until KYS unlawfully terminated her employment on or around July 15, 2020.

18. In practice, however, Starks was a childcare worker.

19. Shortly after Starks' interview and onboarding process, she contracted COVID-19 on or about June 6, 2020.

20. Starks received positive test results for COVID-19 on or about June 12, 2020.

21. Starks gave notice of her positive test immediately after via a call with secretary Tiffany Kelly.

22. Tiffany Kelly told Starks that her COVID-19 leave would be unpaid as she had not worked at KYS long enough to qualify for paid leave under the FFCRA.

23. Starks' positive COVID-19 diagnosis caused her to be disabled.

24. Starks' positive COVID-19 diagnosis constituted a physical impairment.

25. Starks' positive COVID-19 diagnosis substantially impaired one or more of her major life activities, including working.

26. Alternatively, KYS perceived Starks as being disabled due to her COVID-19 diagnosis.

27. KYS perceived that Starks' medical condition constituted a physical impairment.

28. KYS perceived Starks' disability to substantially impair one or more of her major life activities, including working.

29. Despite this actual or perceived disabling condition, Starks was still able to perform the essential functions of her job.

30. On or about June 13, 2020, owner Joe Kelly gave notice to all KYS employees of Starks' positive test via group text, as well as the positive tests of three other KYS employees.

31. Tiffany Kelly specifically named Starks' positive test in the group text to all employees.

32. These disclosures of private health information were adverse actions against Starks for disclosing her COVID-positive status and quarantining as a result.

33. On or about June 16, 2020, Tiffany Kelly called Starks to apologize for being harsh earlier.

34. Tiffany Kelly spoke to Joe Kelly, and informed Starks that KYS decided to pay her during her time off, despite purportedly not being required to by FFCRA.

35. Tiffany Kelly also noted one of KYS' patient's positive test results during the call - another violation of HIPAA.

36. Throughout her quarantine, Starks continued to attend staff meetings virtually and perform all job functions that could be done virtually.

37. Near the end of Starks' quarantine, client support manager Carla Howbard called Starks for an update.

38. Starks informed Howbard that she was feeling better, but her test results were still coming back positive, and she could not be cleared to work by her primary care physician until the tests came negative.

39. On or about June 30, 2020, Starks repeated to KYS that she didn't receive a negative test result yet and was not cleared to work.

40. Starks continued to take several more tests as time went on, but continually received positive results.

41. In or around July 8, 2020, Starks took her final COVID-19 test, which returned negative.

42. Starks' doctor instructed Starks to remain in quarantine for two weeks after this negative test to ensure she was fully cleared of the disease and was no longer infectious.

43. Starks continued to keep KYS informed of all these medical updates.

44. After the final two-week quarantine, Stark's return to work date was July 24, 2020.

45. However, on July 15, 2020, before Starks could return to work, her employment was terminated citing "job abandonment."

46. Starks had not abandoned her job. She was in quarantine.

47. Starks kept KYS informed through the entire process of her recovery.

48. Starks attempted to attend all meetings she could virtually.

49. It was important Starks did not come to work in person as she worked with children, and could have given them COVID-19.

50. To the extent Starks had missed work, such absences should have been covered by FFCRA leave because they were connected to Starks' COVID-19 diagnosis.

51. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

52. There was a causal connection between Starks' diagnosis and Defendant's termination of Starks.

53. KYS' termination of Starks' employment was an adverse employment action against her.

54. KYS' purported reason, or lack thereof, for Starks' termination was pretext.

55. KYS actually terminated Starks' employment discriminatorily against her actual or perceived disability, to avoid providing her a reasonable accommodation, and/or in retaliation against her protected COVID-19 related leave.

56. As a result of KYS' acts and omissions, Starks has suffered, and will continue to suffer, damages.

### COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA

57. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

58. Starks suffered from COVID-19. As a result, Starks was in a protected class for disability.

59. Alternatively, KYS perceived Starks as being disabled.

60. Starks' condition constituted a physical impairment.

61. Starks' condition substantially impaired one or more of her major life activities including working.

62. KYS perceived Starks' condition to substantially impair one or more of her major life activities including working.

63. On or about July 15, 2020, Defendant terminated Starks' employment without just cause.

64. Alternatively, KYS' reason for Starks' termination was pretext.

65. Defendant terminated Starks' employment based her perceived disability.

66. Defendant violated the ADA when it discharged Starks based on her perceived disability.

67. KYS violated the ADA by discriminating against Starks based on her perceived disabling condition.

68. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

69. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION UNDER O.R.C. §4112 et seq.

70. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Starks suffered from COVID-19. As a result, Starks was in a protected class for disability.

72. Alternatively, KYS perceived Starks as being disabled.

73. Starks' condition constituted a physical impairment.

E-FILED 06/01/2022 10:49 AM / CONFIRMATION 1195471 / A 2201970 / COMMON PLEAS DIVISION / IFIJ

74. Starks' condition substantially impaired one or more of her major life activities including working.

75. KYS perceived Starks' condition to substantially impair one or more of her major life activities including working.

76. On or about July 15, 2020, Defendant terminated Starks' employment without just cause.

77. Alternatively, KYS' reason for Starks' termination was pretext.

78. Defendant terminated Starks' employment based her perceived disability.

79. Defendant violated R.C. § 4112.02 when it discharged Starks based on her perceived disability.

80. KYS violated R.C. § 4112.02 by discriminating against Starks based on her perceived disabling condition.

81. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

82. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: FAILURE TO ACCOMODATE UNDER THE ADA

132. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Starks informed KYS of her disabling condition.

134. Starks requested accommodations from KYS to assist with her disabilities including time off to quarantine.

135. Starks' requested accommodations were reasonable.

136. There was an accommodation available that would have been effective and would have not posed an undue hardship to KYS.

7

137. KYS failed to engage in the interactive process of determining whether Starks needed an accommodation.

138. KYS failed to provide an accommodation.

139. KYS violated the ADA.

140. As a direct and proximate result of KYS' conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 et. seq.

141. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Starks informed Defendant of her disabling condition.

143. Starks requested accommodations from Defendant to assist with her disabilities including time off to quarantine.

144. Starks' requested accommodations were reasonable.

145. There was an accommodation available that would have been effective and would have not posed an undue hardship to KYS.

146. Defendant failed to engage in the interactive process of determining whether Starks needed an accommodation.

147. Defendant failed to provide an accommodation.

148. Defendant violated R.C. § 4112.02 by failing to provide Starks a reasonable accommodation.

149. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH RIGHTS UNDER THE FFCRA

151. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Pursuant to the FFCRA, an employee qualifies for two weeks of paid sick leave if the employee is unable to work because of the need to care for a child whose school or childcare provider is closed or unavailable due to COVID-19.

153. Under the FFCRA, employees are also eligible for an additional ten weeks of paid expanded family and medical leave to care for a child whose school or childcare provider is closed due to COVID-19.

154. Employers in violation of the provisions providing for up to an additional ten weeks of paid leave to care for a child whose school or place of care is closed are subject to the enforcement of the Family and Medical Leave Act ("FMLA").

155. At all times relevant, KYS was a qualified employer under the FFCRA.

156. At all times relevant, Starks was a qualified employee under the FFCRA.

157. Starks contracted COVID-19 and therefore had to take time off to quarantine.

158. Starks remained in quarantine for the duration of the time her COVID-19 tests came positive.

159. Starks remained in quarantine for two weeks after her COVID-19 test came negative upon her doctor's advice.

160. Starks kept KYS informed of the quarantine and recovery process.

161. Nevertheless, KYS terminated Starks for taking time off to quarantine.

162. KYS unlawfully interfered with Starks' exercise of her rights under the FFCRA.

163. KYS' termination of Starks' employment for accessing benefits under the FFCRA violated and interfered with Starks' FFCRA rights.

9

164. As a direct and proximate result of KYS' conduct, Starks is entitled to enforcement of the applicable provisions under the FMLA, including but not limited to, damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### DEMAND FOR RELIEF

WHEREFORE, Starks demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Starks' personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Starks for physical injury, physical sickness, lost wages, emotional

distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Stark's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

　/s/ Evan R. McFarland　
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
　　Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:　　(216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Zakeya Starks*

11

## **JURY DEMAND**

Plaintiff Zakeya Starks demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland
Evan R. McFarland (0096953)

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
June 1, 2022 10:49 AM
    PAVAN PARIKH
  Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1195471
```

**ZAKEYA STARKS**  **A 2201970**

**vs.**

**KELLY YOUTH SERVICES INC**

## FILING TYPE: FILING
## PAGES FILED: 4

EFR200

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, Ohio, 45202
(513) 914-6007
Website: www.eeoc.gov

# DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 03/15/2022

**To:** Ms. Zakeya Starks
3355 Robinet Drive
Cincinnati, OH 45238

Charge No: 473-2021-00344

EEOC Representative and email:   Daniel Williams
Investigator
daniel.williams@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 473-2021-00344.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Cincinnati Area Office**
550 Main Street, Suite 10-191
Cincinnati, Ohio, 45202
(513) 914-6007
Website: www.eeoc.gov

On Behalf of the Commission:

Digitally Signed By: Michelle Eisele / dfw
03/15/2022

Michelle Eisele
District Director

**Cc:**
Tiffany Kelly
Administrator
K.E.L.L.Y. YOUTH SERVICES, INC.
administrator@kysinc.com

Brian G Dershaw
Counsel
Taft Stettinius & Hollister LLP
bdershaw@taftlaw.com

Evan R McFarland
Attorney at LawTHE SPITZ LAW FIRM, LLC
Evan.McFarland@spitzlawfirm.com

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

We recommend that you and your attorney (if you retain one) review the resources at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests. Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 473-2021-00344 to the District Director at Michelle Eisele, 1010 West Ohio St Suite 1900, Indianapolis, IN 46204. You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC. For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

Enclosure with EEOC Notice of Closure and Rights

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.