

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
June 1, 2022 10:49 AM
PAVAN PARIKH
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1195471

**ZAKEYA STARKS**  A 2201970

vs.
**KELLY YOUTH SERVICES INC**

FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

PAGES FILED: 12

EFR200

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ZAKEYA STARKS<br>3355 Robinet Drive<br>Cincinnati, OH 45238<br><br>Plaintiff,<br><br>v.<br><br>K.E.L.L.Y. YOUTH SERVICES, INC.<br>800 Compton Road, Unit 11<br>Cincinnati, OH 45231<br><br>**Serve Also:**<br>K.E.L.L.Y. YOUTH SERVICES, INC.<br>c/o Joe Kelly<br>Statutory Agent<br>800 Compton Road, Unit 11<br>Cincinnati, OH 45231<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE:<br><br><br>**COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

Plaintiff, Zakeya Starks, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

### PARTIES

1. Starks is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant K.E.L.L.Y. Youth Services, Inc. ("KYS") is a domestic non-profit corporation that conducts business within the state of Ohio.

3. The relevant location of the events and omissions of this Complaint took place was 800 Compton Road, Unit 11, Cincinnati, OH 45231.

4. KYS is, and was at all times hereinafter mentioned, Starks' employer within the meaning of the Americans with Disability Act ("ADA") 42 U.S.C. §12101, the Family First Coronavirus Relief Act ("FFCRA"), and R.C. § 4112.01 et seq.

1

5. Within 300 days of the adverse employment actions described herein, Starks filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00344 ("EEOC Charge").

6. On or about March 15, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Starks regarding the EEOC Charge.

7. Starks received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

8. Starks had filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Starks had properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. The material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

13. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

14. Starks is a former employee of KYS.

15. At all times noted herein, Starks was qualified for her position at KYS.

16. At all times noted herein, Starks could fully perform the essential functions of her job, with or without reasonable accommodation.

17. Starks was hired as a house manager on or around May 19, 2022, until KYS unlawfully terminated her employment on or around July 15, 2020.

18. In practice, however, Starks was a childcare worker.

19. Shortly after Starks' interview and onboarding process, she contracted COVID-19 on or about June 6, 2020.

20. Starks received positive test results for COVID-19 on or about June 12, 2020.

21. Starks gave notice of her positive test immediately after via a call with secretary Tiffany Kelly.

22. Tiffany Kelly told Starks that her COVID-19 leave would be unpaid as she had not worked at KYS long enough to qualify for paid leave under the FFCRA.

23. Starks' positive COVID-19 diagnosis caused her to be disabled.

24. Starks' positive COVID-19 diagnosis constituted a physical impairment.

25. Starks' positive COVID-19 diagnosis substantially impaired one or more of her major life activities, including working.

26. Alternatively, KYS perceived Starks as being disabled due to her COVID-19 diagnosis.

27. KYS perceived that Starks' medical condition constituted a physical impairment.

28. KYS perceived Starks' disability to substantially impair one or more of her major life activities, including working.

29. Despite this actual or perceived disabling condition, Starks was still able to perform the essential functions of her job.

30. On or about June 13, 2020, owner Joe Kelly gave notice to all KYS employees of Starks' positive test via group text, as well as the positive tests of three other KYS employees.

31. Tiffany Kelly specifically named Starks' positive test in the group text to all employees.

32. These disclosures of private health information were adverse actions against Starks for disclosing her COVID-positive status and quarantining as a result.

33. On or about June 16, 2020, Tiffany Kelly called Starks to apologize for being harsh earlier.

34. Tiffany Kelly spoke to Joe Kelly, and informed Starks that KYS decided to pay her during her time off, despite purportedly not being required to by FFCRA.

35. Tiffany Kelly also noted one of KYS' patient's positive test results during the call - another violation of HIPAA.

36. Throughout her quarantine, Starks continued to attend staff meetings virtually and perform all job functions that could be done virtually.

37. Near the end of Starks' quarantine, client support manager Carla Howbard called Starks for an update.

38. Starks informed Howbard that she was feeling better, but her test results were still coming back positive, and she could not be cleared to work by her primary care physician until the tests came negative.

39. On or about June 30, 2020, Starks repeated to KYS that she didn't receive a negative test result yet and was not cleared to work.

40. Starks continued to take several more tests as time went on, but continually received positive results.

41. In or around July 8, 2020, Starks took her final COVID-19 test, which returned negative.

42. Starks' doctor instructed Starks to remain in quarantine for two weeks after this negative test to ensure she was fully cleared of the disease and was no longer infectious.

43. Starks continued to keep KYS informed of all these medical updates.

44. After the final two-week quarantine, Stark's return to work date was July 24, 2020.

45. However, on July 15, 2020, before Starks could return to work, her employment was terminated citing "job abandonment."

46. Starks had not abandoned her job. She was in quarantine.

47. Starks kept KYS informed through the entire process of her recovery.

48. Starks attempted to attend all meetings she could virtually.

49. It was important Starks did not come to work in person as she worked with children, and could have given them COVID-19.

50. To the extent Starks had missed work, such absences should have been covered by FFCRA leave because they were connected to Starks' COVID-19 diagnosis.

51. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

52. There was a causal connection between Starks' diagnosis and Defendant's termination of Starks.

53. KYS' termination of Starks' employment was an adverse employment action against her.

54. KYS' purported reason, or lack thereof, for Starks' termination was pretext.

55. KYS actually terminated Starks' employment discriminatorily against her actual or perceived disability, to avoid providing her a reasonable accommodation, and/or in retaliation against her protected COVID-19 related leave.

56. As a result of KYS' acts and omissions, Starks has suffered, and will continue to suffer, damages.

**COUNT I: DISABILITY DISCRIMINATION UNDER THE ADA**

57. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

58. Starks suffered from COVID-19. As a result, Starks was in a protected class for disability.

59. Alternatively, KYS perceived Starks as being disabled.

60. Starks' condition constituted a physical impairment.

61. Starks' condition substantially impaired one or more of her major life activities including working.

62. KYS perceived Starks' condition to substantially impair one or more of her major life activities including working.

63. On or about July 15, 2020, Defendant terminated Starks' employment without just cause.

64. Alternatively, KYS' reason for Starks' termination was pretext.

65. Defendant terminated Starks' employment based her perceived disability.

66. Defendant violated the ADA when it discharged Starks based on her perceived disability.

67. KYS violated the ADA by discriminating against Starks based on her perceived disabling condition.

68. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

69. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION UNDER O.R.C. §4112 et seq.

70. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. Starks suffered from COVID-19. As a result, Starks was in a protected class for disability.

72. Alternatively, KYS perceived Starks as being disabled.

73. Starks' condition constituted a physical impairment.

74. Starks' condition substantially impaired one or more of her major life activities including working.

75. KYS perceived Starks' condition to substantially impair one or more of her major life activities including working.

76. On or about July 15, 2020, Defendant terminated Starks' employment without just cause.

77. Alternatively, KYS' reason for Starks' termination was pretext.

78. Defendant terminated Starks' employment based her perceived disability.

79. Defendant violated R.C. § 4112.02 when it discharged Starks based on her perceived disability.

80. KYS violated R.C. § 4112.02 by discriminating against Starks based on her perceived disabling condition.

81. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

82. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: FAILURE TO ACCOMODATE UNDER THE ADA

132. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Starks informed KYS of her disabling condition.

134. Starks requested accommodations from KYS to assist with her disabilities including time off to quarantine.

135. Starks' requested accommodations were reasonable.

136. There was an accommodation available that would have been effective and would have not posed an undue hardship to KYS.

7

137. KYS failed to engage in the interactive process of determining whether Starks needed an accommodation.

138. KYS failed to provide an accommodation.

139. KYS violated the ADA.

140. As a direct and proximate result of KYS' conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 et. seq.

141. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Starks informed Defendant of her disabling condition.

143. Starks requested accommodations from Defendant to assist with her disabilities including time off to quarantine.

144. Starks' requested accommodations were reasonable.

145. There was an accommodation available that would have been effective and would have not posed an undue hardship to KYS.

146. Defendant failed to engage in the interactive process of determining whether Starks needed an accommodation.

147. Defendant failed to provide an accommodation.

148. Defendant violated R.C. § 4112.02 by failing to provide Starks a reasonable accommodation.

149. Starks suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Defendant's conduct, Starks suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH RIGHTS UNDER THE FFCRA

151. Starks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152. Pursuant to the FFCRA, an employee qualifies for two weeks of paid sick leave if the employee is unable to work because of the need to care for a child whose school or childcare provider is closed or unavailable due to COVID-19.

153. Under the FFCRA, employees are also eligible for an additional ten weeks of paid expanded family and medical leave to care for a child whose school or childcare provider is closed due to COVID-19.

154. Employers in violation of the provisions providing for up to an additional ten weeks of paid leave to care for a child whose school or place of care is closed are subject to the enforcement of the Family and Medical Leave Act ("FMLA").

155. At all times relevant, KYS was a qualified employer under the FFCRA.

156. At all times relevant, Starks was a qualified employee under the FFCRA.

157. Starks contracted COVID-19 and therefore had to take time off to quarantine.

158. Starks remained in quarantine for the duration of the time her COVID-19 tests came positive.

159. Starks remained in quarantine for two weeks after her COVID-19 test came negative upon her doctor's advice.

160. Starks kept KYS informed of the quarantine and recovery process.

161. Nevertheless, KYS terminated Starks for taking time off to quarantine.

162. KYS unlawfully interfered with Starks' exercise of her rights under the FFCRA.

163. KYS' termination of Starks' employment for accessing benefits under the FFCRA violated and interfered with Starks' FFCRA rights.

164. As a direct and proximate result of KYS' conduct, Starks is entitled to enforcement of the applicable provisions under the FMLA, including but not limited to, damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Starks demands from Defendant the following:

a) Issue a permanent injunction:

    i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Starks' personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Starks for physical injury, physical sickness, lost wages, emotional

distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Stark's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
    Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Zakeya Starks*

E-FILED 06/01/2022 10:49 AM / CONFIRMATION 1195471 / A 2201970 / COMMON PLEAS DIVISION / IFIJ

## JURY DEMAND

Plaintiff Zakeya Starks demands a trial by jury by the maximum number of jurors permitted.

/s/ Evan R. McFarland<br>
Evan R. McFarland (0096953)